IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

TAVARIS L. MOSS,

Plaintiff,

v. Case No. CIV-11-154-D

JOHN MIDDLETON, Assistant Warden, in his personal and official capacity; JOSEPH TAYLOR, Warden, in his personal and official capacity; JOHN HILLIGOSS, Unit Manager, in his personal and official capacity; DON STEER, Chief of Security, in his personal and official capacity; LAUREL BOGERT, Case Manager, in her personal and official capacity; TOMMY BATTLES, Senior Officer (Sgt.), in his personal and official capacity; RAY CHOATES, Unit Manager, in his personal and official capacity; and JUSTIN JONES, Director of Okla. Dept. of Corrections, in his personal and official capacity,

Defendants.

**Report and Recommendation:**
**Dispositive Motion by Defendant Justin Jones**

Mr. Justin Jones is the director of the Oklahoma Department of Corrections[1] and Mr. Tavaris Moss is a state inmate housed at a private prison, the Cimarron Correctional Facility.[2] According to Mr. Moss, his life was put in danger when his status as a "catchout" (snitch)

---

1 *See* Doc. 19 at p. 2.

2 *See* Doc. 19 at p. 2.

and former prison employee was disclosed to other inmates.[3] The perception of danger led the Plaintiff to utilize the prison's grievance procedure and send a letter to Mr. Jones. Unhappy with the result, Mr. Moss has sued under 42 U.S.C. § 1983 for monetary and injunctive relief. The claims include complaints against Mr. Jones for mishandling of an administrative appeal and the letter.

This defendant moves for dismissal or, in the alternative, for summary judgment. For the claims against Mr. Jones, the Court should grant dismissal:

- in his official capacity on the prayer for monetary relief,
- in his personal capacity on the claim involving deficiencies in the handling of the administrative appeal, and
- in his personal and official capacities on the prayer for injunctive relief.

In his personal capacity, Mr. Jones is entitled to summary judgment on the monetary claim involving inadequacies in the response to a letter.

## I. The Damage Claims Against Mr. Jones in His Official Capacity: Eleventh Amendment Immunity

In his official capacity, Mr. Jones is entitled to dismissal under the Eleventh Amendment for the damage claims.

### A. Standard for Dismissal

Defendant Jones urges dismissal for failure to state a valid claim under Fed. R. Civ. P. 12(b)(6) and 28 U.S.C. § 1915(e)(2)(B)(ii) (2006). In determining whether dismissal is

[3] Doc. 19 at pp. 4, 7.

appropriate, the Court considers whether Mr. Moss has pled "enough facts to state a claim to relief that is plausible on its face."[4] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[5] In applying this standard, the Court must assume the truth of all well-pleaded factual allegations in the second amended complaint and construe them in the light most favorable to the Plaintiff.[6]

B. Application

As a state official, Mr. Jones enjoys immunity under the Eleventh Amendment "if the state is the real, substantial party in interest."[7] Because Mr. Jones is employed by the state department of corrections,[8] the official capacity claims would be equivalent to causes of action against the State.[9] Thus, the Eleventh Amendment forecloses assertion of an official

---

4 *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

5 *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (citation omitted).

6 *See Bryson v. Edmond*, 905 F.2d 1386, 1390 (10th Cir. 1990).

7 *Frazier v. Simmons*, 254 F.3d 1247, 1253 (10th Cir. 2001).

8 *See supra* p. 1.

9 *See Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989) (stating that a suit against a state official in his official capacity "is no different from a suit against the State itself" (citations omitted)).

capacity claim against Mr. Jones for monetary relief. However, the dismissal should be without prejudice.[10]

## II. The Damage Claims Against Mr. Jones in His Personal Capacity: Personal Participation and Qualified Immunity

The Plaintiff bases the claims against Mr. Jones on his alleged failure to adequately respond to the administrative appeal and a letter.[11] For the claims involving mishandling of the administrative appeal, Mr. Jones is entitled to dismissal based on a lack of personal participation. And, he enjoys qualified immunity on the claim involving his response to the letter. On this claim, Mr. Jones should obtain summary judgment.

### A. Personal Participation: Mishandling of the Administrative Appeal

In *Gallagher v. Shelton*, the Tenth Circuit Court of Appeals stated:

> We agree with the reasoning in our previous unpublished decisions that a denial of a grievance, by itself without any connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983.[12]

Under *Gallagher v. Shelton*, mishandling of the administrative appeal would not constitute personal participation in the underlying endangerment of Mr. Moss. This opinion entitles

---

[10] *See Wideman v. Colorado*, 409 Fed. Appx. 184, 186 (10th Cir. Sept. 28, 2010) (unpublished op.) (affirming dismissal of Eleventh Amendment claims, but remanding with instructions to make the dismissal without prejudice), *cert. denied*, __ U.S. __, 131 S. Ct. 1474 (2011).

[11] *See supra* p. 2.

[12] *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) (citations omitted).

Mr. Jones to dismissal on the personal capacity claim arising out of the decision on the administrative appeal.

B. Qualified Immunity: Mishandling of the Letter

The Plaintiff also complains about the response to a letter addressed to Mr. Jones.[13] On this claim, Defendant Jones is entitled to summary judgment.

Summary Judgment Standard

The Court should grant summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[14] Parties may establish the existence or nonexistence of a material disputed fact through:

- submission of "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials; or"

- "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."[15]

To determine whether a genuine dispute exists over a material fact, "[t]he court views the record and draws all favorable inferences in the light most favorable to the non-moving party."[16]

---

13 *See supra* p. 2.

14 Fed. R. Civ. P. 56(a).

15 Fed. R. Civ. P. 56(c)(1)(A)-(B).

16 *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. PepsiCo, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005) (citation omitted).

Application

By the time of the letter, Mr. Moss had already initiated administrative proceedings. On August 9, 2010, Mr. Moss filed an administrative appeal with Debbie Morton, who was designated as the "Administrative Review Authority."[17] There Mr. Moss said:

> Do [sic] to the SENSITIVE NATURE to my problem, I can't go to anyone but to the Administrative Review Authority on theabove [sic] date 8-8-2010 time 13:00HRS.CCF Warden Talyor [sic] and I was having a conversation about a Request To Staff asking Why No One Has Given me An Response I waited 30 Days before I filed a grievance, Some how during our conversation CCF Warden talyor [sic] got HOSTILE. He proceeded to tell me to step back, I compled [sic] & waited for his Answer. When CCF Warden Talyor [sic] responsed [sic] He Told me 'To Get My ASS Out Of His Face', before I Have You Locked Up. For one reason or another I Felt Very Disrespected because CCF warden Talyor [sic] had No reson [sic] to talk to me or anyone that way. It was very Unprofessional & I Need to have This matter Looked into. Because that was Inappropreate [sic] behavior for a person in his position, but if you look into this; You will find that Not Only is the CCF Warden Talking To me Like this But His Staff (See My Other Grievance 10-102) with all this HOSTILITY Around Me I'm In FEAR Of MY LIFE & Parole Date. Thanks to Officer Teal Jr. He Witnessed this & made a Statemant [sic] for the Record. Thank God for people like him or you'll think I was Lying & by the way If ASS was used as a Noun Like Officer Teal Jr. Stated then The CCF Warden Called Me An Ass (DONKEY) which by the way is NEGATIVE.[18]

Ms. Morton responded, stating that she would not answer the complaint because it was not considered "sensitive" and that Mr. Moss would need to follow the standard administrative process.[19]

---

[17] Doc. 19-2, Exhibit G at p. 2.

[18] Doc. 19-2, Exhibit G at pp. 2-3.

[19] Doc. 45, Attachment 2 at p. 4.

Eighteen days later, Mr. Moss wrote to Mr. Jones with virtually the same complaints that he had made to Ms. Morton. In the letter to Mr. Jones, Mr. Moss said:

> Sir, Due to the Sensitive Nature to my problem, I can't go to Anyone but to You. On the above Date 8-8-2010 At 13:00HRS. The CCF Warden Talyor [sic] And I was having a Conversation about a Request to staff Asking Why No One Has Given me an response, I waited 30 Days before I File A grievance some how during our Conversation CCF warden Talyor [sic] got Hostile. He proceeded to tell Me to step back, I compled [sic] and waited For his Answer. When CCF warden Talyor [sic] responded He told me "To Get My ASS Out of his Face", "Before I have You Locked up." For one reason or another I felt Very Disrespected because the CCF warden Talyer [sic] had no reason to talk to me nor anyone that way. It was very Unprofessional And I'm asking For your help in this matter. Because that was inappropreate [sic] behavior. For a person in his position. But if you look into this; You will Find that Not only is the CCF warden Talking to me like this But his staff (see my other Grievance 10-102) with all this Hostility Around Me I'm In Fear of my Life & Parole Date. Staff here are tell [sic] other offenders about My past & hearing that I have an S.O.S. out on me by an [sic] Gang. I have Asked/Request For Protection And was "Denied," by U.M. Ray Choale (see attachment) I have also sent an sensitive Grievance to Administrative Review Authority (11-243) and was also Denied relief. Sir I am Asking/Request For Your Help!!![20]

Three days after Ms. Moss signed the letter, Ms. Morton responded:

> Your 08/30/10 letter to Director Jones has been routed to the Administrative Review Authority. You express concerns regarding both staff and offenders at the Cimarron Correctional Center (CCF) and seek transfer or protective custody.
>
> These are matters that must be pursued at the facility level. If you believe that CCF staff are not appropriately addressing your concerns, you should contact Ted Limke, the DOC Private Prison Monitor assigned to the CCF.[21]

---

[20] Doc. 19-1, Exhibit D at pp. 3-4 (emphasis in original).

[21] Doc. 19-1, Exhibit D at p. 2.

Notwithstanding this suggestion, Mr. Limke states under oath that he has never received any correspondence from Mr. Moss.[22] The Plaintiff has not presented any argument or evidence to the contrary.

Against this factual background, the Court must consider the law regarding qualified immunity and the underlying constitutional right.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"[23] In determining whether the right is clearly established, the Court examines the specific context of the case.[24] Ultimately the contours of the right must be sufficiently clear that all reasonable officials would have understood that they were violating a constitutional or statutory right.[25] Although there need not be "a case directly on point," "existing precedent must have placed the statutory or constitutional question beyond debate."[26]

---

[22] Doc. 45-5, Attachment 5.

[23] *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citation omitted).

[24] *See Mink v. Knox*, 613 F.3d 995, 1000 (10th Cir. 2010) ("In determining whether a constitutional right was clearly established, we look at the specific context of the case." (citation omitted)).

[25] *See Ashcroft v. Al-Kidd*, ___ U.S. ___, 131 S. Ct. 2074, 2083 (2011).

[26] *Ashcroft v. Al-Kidd*, ___ U.S. ___, 131 S. Ct. 2074, 2083 (2011) (citation omitted).

Once Mr. Jones asserted qualified immunity, the burden shifted to Mr. Moss to "'meet a strict two-part test' by showing '(1) that [Mr. Jones] violated a constitutional or statutory right, and (2) that this right was clearly established at the time of [his] conduct.'"[27]

The claims against Mr. Jones relate only to his alleged lapse when confronted with Mr. Moss' safety concerns. For these claims, Mr. Moss must show that Mr. Jones had acted with deliberate indifference to the threat reflected in the letter.[28]

Even when the evidence is viewed in favor of Mr. Moss, there is nothing to suggest that Mr. Jones had violated a clearly established constitutional right. The Plaintiff sent Mr. Jones a letter which mirrored an administrative appeal that had been rejected on procedural grounds.[29] Mr. Jones' subordinate, Ms. Debbie Morton, promptly responded.[30] Her letter directed Mr. Moss to Mr. Limke, who bore the departmental responsibility to address safety concerns for individuals housed in private prisons.[31]

Existing precedents would not have suggested to Mr. Jones that his delegation to Ms. Morton or her eventual response to Mr. Moss' letter would have violated the federal constitution.[32]

---

27 *See Bowling v. Rector*, 584 F.3d 956, 964 (10th Cir. 2009) (citation omitted).

28 *See Riddle v. Mondragon*, 83 F.3d 1197, 1204 (10th Cir. 1996).

29 *See supra* p. 6.

30 *See supra* p. 7; *infra* p. 11 n.37.

31 *See supra* p. 7.

32 *See Gardner v. Howard*, 109 F.3d 427, 430 (8th Cir. 1997) (holding that the director of the state department of correctional services was entitled to summary judgment, based on qualified

In similar circumstances, the Fifth Circuit Court of Appeals held that the executive director of a state's department of criminal justice was entitled to qualified immunity as a matter of law when he delegated the task of responding to an inmate letter and her response was perceived as deficient.[33] The court explained:

> [G]iven the size of the operation [supervisors of the state department of criminal justice] oversee, they cannot be expected to intervene personally in response to every inmate letter they receive. The record in this case shows that they responded to [the inmate's] complaints by referring the matter for further investigation or taking similar administrative steps. This was a reasonable discharge of their duty to protect the inmates in their care. Given that neither the Supreme Court nor [the Fifth Circuit Court of Appeals] has delineated the contours of what supervisory officials must do on pain of personal liability, their conduct did not violate clearly established law of which reasonable officers should have known. Therefore, they are entitled to qualified immunity.[34]

The present facts are similar. The claim against Mr. Jones is based on a letter written to him as director of the state department of corrections.[35] This letter consisted largely of the

---

immunity, when he delegated the duty to respond to a prisoner's grievance and the other individual responded in a manner that was allegedly inadequate).

33 *Johnson v. Johnson*, 385 F.3d 503, 526 (5th Cir. 2004).

34 *Johnson v. Johnson*, 385 F.3d 503, 526 (5th Cir. 2004).

35 *See supra* pp. 2, 4, 7.

same complaints communicated in an administrative appeal that had already been rejected by another person on procedural grounds.[36] The director delegated the task of responding to the letter, and the subordinate complied within one or two days.[37] This individual told Mr. Moss who to contact within the department, with authority to handle the matter, and he did not do so.[38] In these circumstances, Mr. Jones had no basis to believe that his handling of the correspondence would have resulted in a violation of Mr. Moss' constitutional rights. Thus, Mr. Jones is entitled to qualified immunity and the Court should grant him summary judgment in his personal capacity on the monetary claims involving deficiencies in the response to Mr. Moss' letter.

## III. The Injunction Claims Against Mr. Jones in His Personal or Official Capacity: Failure to Narrowly Tailor Relief

In part, Mr. Moss requests a transfer to another facility that is not operated by Corrections Corporation of America.[39] This request should be dismissed for failure to state a valid claim.

Because the claims against Mr. Jones involve "prison conditions," the Court can only issue an injunction that "is narrowly drawn," "extends no further than necessary to correct

---

[36] *See supra* p. 6.

[37] As noted above, Mr. Moss signed the letter on August 30, 2011, and the response was dated September 3, 2011. *See* Doc. 19-1, Exhibit D at p. 3. The mailing obviously took at least one day, which meant that Ms. Morton had written her response within one to two days of the department's receipt of Mr. Moss's letter.

[38] *See supra* pp. 7-8.

[39] Doc. 19 at p. 10.

the violation," "and is the least intrusive means necessary to correct the violation of the Federal right."[40]

The alleged violations by Mr. Jones involve deficiencies in the response to an administrative appeal and a letter requesting help.[41] A transfer away from C.C.A.'s control would not be considered narrowly tailored to correct Mr. Jones' alleged errors. If the D.O.C. director had mishandled the administrative appeal or letter, an injunction could conceivably entail some safeguards to ensure Mr. Moss' safety. But Mr. Jones' actions would not call for a transfer out of C.C.A.'s control. In these circumstances, the Court should apply Rule 12(b)(6) and dismiss the request for an injunction in the form of a transfer order. However, this dismissal should be without prejudice.[42]

## IV. Recommended Rulings

The Court should grant the motion to dismiss on the claims for an injunction, the request for damages in Mr. Jones' official capacity, and the request for money damages in his personal capacity based on inadequacies in the decision on the administrative appeal. The dismissals should be without prejudice.

Mr. Jones is entitled to summary judgment in his personal capacity on the monetary claim involving deficiencies in the response to Mr. Moss' letter.

---

[40] 18 U.S.C. § 3626(a)(1) (2006).

[41] *See infra* pp. 4-7.

[42] *See Reynoldson v. Shillinger*, 907 F.2d 124, 126 (10th Cir. 1990) (stating that a dismissal should be without prejudice when a *pro se* litigant's pleading defects are potentially curable).

V. Notice of the Right to Object

The parties can object to the present report. Any such objection must be filed with the Clerk of this Court by November 17, 2011.[43] The failure to timely object would foreclose appellate review of the suggested rulings.[44]

VI. Status of the Referral

The referral is not discharged.

Entered this 31st day of October, 2011.

Robert E. Bacharach
Robert E. Bacharach
United States Magistrate Judge

---

43 *See* Fed. R. Civ. P. 6(d), 72(b)(2); 28 U.S.C. § 636(b)(1) (2009 supp.).

44 *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).